UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN MUSGROVE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>HONORABLE GONZALO P. CURIEL,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:23-cv-01613-RBM-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**<br><br>**(2) DISMISSING CASE ON SCREENING PER 28 U.S.C. § 1915(e)(2)(B)(ii) WITH PREJUDICE**<br><br>**[Doc. 2]** |

On September 1, 2023, Plaintiff Irvin Musgrove ("Plaintiff"), proceeding *pro se*, brought this 42 U.S.C. § 1983 action against The Honorable Gonzalo P. Curiel, alleging violations of Plaintiff's Fifth and Fourteenth Amendment rights. (Doc. 1 ("Complaint").) Along with his Complaint, Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915. (Doc. 2.) The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, the Court **GRANTS** Plaintiff's IFP motion (Doc. 2) and **DISMISSES** the Complaint without leave to amend.

1

## I. BACKGROUND[1]

Plaintiff alleges that, on March 31, 2020, he filed a "Civil Complaint with the San Diego District Court, against the Oceanside Housing Authority ("OHA")." (Complaint ¶ 7.)[2] None of the defendants in that case abided by a summons, and Plaintiff moved for default judgment. (*Id.* ¶¶ 7–8.) "On March 4, 2021, [Judge Curiel] filed a denial of [his] Motion for Default Judgement" and questioned Plaintiff's use of reasonable diligence in serving the defendants, which Plaintiff disputes. (*Id.* ¶ 8.) Judge Curiel "mailed a copy of [Plaintiff's] Motion denial and integrity question, to the Oceanside City Attorney[.]" (*Id.*) Judge Curiel "went on & on about [Plaintiff] not providing proof that [he] had the defendants served properly. [Judge Curiel] failed to take Covid 19 restrictions into consideration, which made (OHA), as well as the majority of businesses in the U.S.A., refuse to allow entry into their place of business." (*Id.* ¶ 9.)

### A. Scheme

Plaintiff asserts the first of three service occasions on the defendants was successful but that he was not aware of the reasonable diligence requirement. (*Id.* ¶ 10.) On March 11, 2021, he returned the summons executed "after having the defendants served with [his] [Fifth Amended Complaint], that was served with the utmost amount of [reasonable diligence], for complete satisfaction of the [reasonable diligence] requirement. [He] provided the proof of this fact … [b]ut little did [he] know or realize, that [Judge Curiel's] question in re to [Plaintiff's] use of [reasonable diligence], had an attached plot with a different purpose, and was actually the wheel, that he intentionally had set in motion, a part of a ploy." (*Id.*) Plaintiff also paid the filing fee. (*Id.* ¶¶ 13–14.) On May 12, 2021, Judge Curiel "filed an Order Dismissing [his] 5th Amended Complaint." (*Id.* ¶ 12.)

---

[1] The Court's recitation of Plaintiff's allegations in this background section does not contain the factual or legal opinions of the Court.

[2] The Court cites the CM/ECF pagination unless otherwise noted.

Plaintiff alleges that, on March 11, 2021, he served defendants with reasonable diligence, which caught Judge Curiel "totally by surprise, and so he needed a different means of accomplishing his goal." (*Id.* ¶ 15.) "This gave [Judge Curiel] the need for alternative way of accomplishing his goal, which would entail fraud & deceit." (*Id.*) Judge Curiel then ordered the U.S. Marshall to serve defendants but not at Plaintiff's request. (*Id.*) On July 1, 2021, "the defendants answered the complaint, after intentionally refusing to abide by the 4 summons, over the course of 1 year & 4 months" and then filed a motion to dismiss for failure to state a claim. (*Id.* ¶ 17.) Plaintiff alleges there is no record of the defendants' attorney contacting the courts, but "[o]nce she accepted [Judge Curiel's] Ex Parte communication, she became a party to it, and there's no way it could have simply ended there, because the strings he'd pull, would require a cooperative effort." (*Id.* ¶ 18.)

Subsequently, Judge Curiel came up with the "fraudulent claim" that Plaintiff had never served defendants the Fifth Amended Complaint and defense counsel was aware of this "blatant lie." (*Id.* ¶ 21.) "This means they both knew this fraud, that began its implementation on 03/04/2021, was used as a means to deceive the court & [Plaintiff]. Their goal & fraudulent slander of [Plaintiff], which was methodically achieved from 7 months of progressive & conspired acts of fraud, were done to protect her clients & his chosen party, at [Plaintiff's] expense[.]" (*Id.*) "[Plaintiff's] 03/11/2021, service occasion that satisfied the [reasonable diligence] requirement, concerned [Judge Curiel], which was why there was no valid reason or proof given, except for the fee waive misrepresentation, with the claim that [Plaintiff] hadn't served the defendants." (*Id.* ¶ 23.) "In the beginning, it was only about the [reasonable diligence], but after [Plaintiff's] 03/11/2021 service, 2 months later, it evolved into the fee waiver & Marshal method in order to claim that [Plaintiff] hadn't served [defendants], with the courts erred judgement that allowed [Plaintiff] to serve [defendants] in the 1st place, that would misrepresent the court as the source of fault." (*Id.* ¶ 24.)

///

///

n
n

### B. Recusal

A few months after dismissing the Fifth Amended Complaint, Judge Curiel "finally recuse[d] himself as the laws and codes suggest." (*Id.* ¶ 27.) "[Judge Curiel] waited 307 days after contacting the City Atty & 79 day after his final fraudulent act, before recusing himself, which isn't considered to be rule abiding by itself. [Judge Curiel] also didn't want to recuse himself, when there was a chance that [Plaintiff's] final service could still be effective, so his recusal had to wait. Why did [Judge Curiel] recuse himself after doing the fraud? To make it appear like he'd done no wrong, since recusing one's self is a preventive measure, thus hoping no one would look into his actions? He knew he was mandated to recuse himself prior to contacting the City Atty, but he intentionally maintained 10 months, under the cloak of deceit & estranged from fulfilling his judicial capacity." (*Id.*) "Since 03/04/2021, this case has been about a severe Abuse of Process by Fraudulent Misrepresentation, while denying [Plaintiff's] right to Due Process or Equal Protection, that was accomplished by the use of Libel & Slander by a Treasonous Judge, who in no way represented the true nature of the court." (*Id.*)

### C. Fraud on the Court

Judge Curiel "committed 'fraud upon the court' on a few occasions between 03/04/2021, the date that he contacted the Oceanside City Atty, Barbara Hamilton, and 1/05/2022 which was the date that he recused himself." (*Id.* ¶ 41.) Judge Curiel "willingly & intentionally, manipulated the fact surrounding [Plaintiff's] filing fee, to erase the true & legitimate existence of the 4 occasions, when the Plaintiff had the defendants served. He discriminated, belittled, demoralized, defamed the character, humiliated, cause[d] emotion[al] distress, etc., without hesitation or a care in the world about the pain that the plaintiff would surely suffer as a result of his judicial betrayal." (*Id.* ¶ 42.) Judge Curiel knew "from 1st contact with the City Atty, that the defendants would undoubtably gain procedural & tactical advantage, because his actions would guarantee it … His every move after 1st contact, was intentionally made to harm [Plaintiff] [on] their behalf." (*Id.* ¶ 54.) "[Judge Curiel] obviously violated [Plaintiff's] right to Equal Protection as well." (*Id.*

¶ 55.) "The 4 summons that [Plaintiff] successfully had served on the defendants, over the course of 1 year & 4 months, [Judge Curiel] simply decided to, state on the record literally, as 'never served', after month, of 'Malice of Forethought'." (*Id.* ¶ 57.)

### D. Libel and Slander

"[Judge Curiel], obviously decided that the best way to guarantee that the defendants had continued safety from not abiding by the summons for 1 ½ years, was to place the total blame on [Plaintiff]. So, to conclude their plot, and because [Plaintiff] was dispensable, he chose [to] desecrate [Plaintiff's] name, by informing the court that [Plaintiff] actually hadn't had the defendants served on either of the 4 occasions, that [Plaintiff] had sworn to the court that [he] had, while under oath … and as a result, he declared their 1st day to be a few days after he fraudulently arranged the Order … for the Marshals to serve, which was on 06/11/2021." (*Id.* ¶ 59.) "[Plaintiff's] reputation will be damaged because of [Judge Curiel's] reckless disregard for [Plaintiff], because of the slanderous words that he chose to state on a legal document." (*Id.* ¶ 60.) "Most likely, victims of other opportunistic people in power, like the defendants that [Plaintiff] filed [his] complaint against, who decide to use [his] case as a citation for their case, as well as those who simply choose to review it, will have a reason to have a lowly opinion of [Plaintiff], or believe that [he] was/[is] an opportunist, who got away with one. They will surely review this totally blatant lie that he stated, without the way of knowing or finding out, that these words weren't true, unless they happen to review this case. [They] may not understand that he discredited [Plaintiff's] filing fee and used it to justify the court erred requirement that [Plaintiff] serve, and the erasure due to the fabricated court error." (*Id.*) "[Judge Curiel] took his self-proclaimed discriminatory war against [Plaintiff], to the point of where he foolishly stated a blatant lie in the document … that will undoubtably bring question to [Plaintiff's]: honesty, sincerity, having a hidden agenda, being opportunistic, having integrity, etc., for years to come." (*Id.* ¶ 62.)

///

///

### E. Claims

Plaintiff asserts claims under 42 U.S.C. § 1983 arising under the Fifth and Fourteenth Amendments for violations of due process, equal protection, libel and slander, and a violation of his right to an impartial decision maker. (*Id.* ¶¶ 68–77.) With respect to equal protection, he alleges Judge Curiel "subjected [him] to undue discrimination, whether it was due to race or being Pro Se but the fact is, [Plaintiff] was bullied into facing and enduring it all the same, and he led the way for his replacements who proved to be a great compliment to his walk." (*Id.* ¶ 77.)

### F. Damages and Relief Sought

Plaintiff is "already disabled, with Depression & PTSD, since 2012." (*Id.* ¶ 78.) Judge Curiel's "actions forced [Plaintiff] to experience a variety of mental beliefs [and] thoughts that had intense affects on the way [Plaintiff] feel[s]" and expressed in the Complaint. (*Id.*) Judge Curiel's actions inspired his replacements, so Plaintiff's "mental & emotional hardships, continued and continue because they've ensured that [Plaintiff's] case is far from over, because they refuse to address, rule on, or even acknowledge the FRAUD UPON THE COURT, even though they covered [Plaintiff's] 14-page Motion, in which [Plaintiff] refused to simply continue with Fraud being allowed to exist & literally damage [his] case." (*Id.* ¶ 80.) "[Plaintiff has] been bullied, humiliated, discriminated against, targeted and attacked, belittled maliciously robbed of almost 2 years of court time by a judge, made victim in front of [Plaintiff's] violators betrayed, disregarded, released and attacked more by the replacements due to [Judge Curiel's] corruptive lead, etc. [Plaintiff's] mental & emotional damage and traumas, have been extensive, to the point where [he's] had to change to a stronger medication and [he's] been experience chest tightness over the heart area, which is documented." (*Id.* ¶ 88.) "Due to the extent of the madness that [Plaintiff has] been bullied by the courts into having to also endure it because no relief is available, [Plaintiff is] seeking Compensatory, Injunctive, Emotional Distress & Mental Anguish, & a Substantial amount in Punitive Damages, because there needs to

be a lesson taught and an example set, that will show and prove that these kinds of actions or anything close, stands at ZERO tolerance." (*Id.* ¶ 94.)

## II.   LEGAL STANDARD

A motion to proceed IFP presents two issues for the Court's consideration. First, the Court must determine whether an applicant properly shows an inability to pay the $405[3] civil filing fee required by this Court. *See* 28 U.S.C. §§ 1914(a), 1915(a). To that end, an applicant must provide the Court with a signed affidavit "that includes a statement of all assets[,] which shows inability to pay initial fees or give security." Civ. L.R. 3.2(a). Second, § 1915(e)(2)(B)(ii) requires the Court to evaluate whether an applicant's complaint sufficiently states a claim upon which relief may be granted. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim.").

## III.   DISCUSSION

### A.   Motion to Proceed IFP

An applicant need not be completely destitute to proceed IFP, but he must adequately prove his indigence. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). An adequate affidavit should "allege[] that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins*, 335 U.S. at 339); *see also United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (an adequate affidavit should state supporting facts "with some particularity, definiteness and certainty") (citation omitted). No exact formula is "set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP

---

[3] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a); UNITED STATES COURTS, DISTRICT COURT MISCELLANEOUS FEE SCHEDULE § 14 (effective Dec. 1, 2023), https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

status." *Escobedo*, 787 F.3d at 1235. Consequently, courts must evaluate IFP requests on a case-by-case basis. *See id.* at 1235–36 (declining to implement a general benchmark of "twenty percent of monthly household income"); *see also Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (requiring that district courts evaluate indigency based upon available facts and by exercise of their "sound discretion"), *rev'd on other grounds*, 506 U.S. 194 (1993); *Venable v. Meyers*, 500 F.2d 1215, 1216 (9th Cir. 1974) ("The granting or denial of leave to proceed [IFP] in civil cases is within the sound discretion of the district court.").

Here, in support of his IFP application, Plaintiff states in his affidavit that he receives $1,329.00 in public assistance each month but otherwise has no income. (Doc. 2 at 2–3.) He reports no employment, a checking account with no holdings, and his only asset includes a non-operable motor vehicle worth $1.00. (*Id.* at 3–4.) He reports average monthly expenses in the amount of $1,172.95. (*Id.* at 4–5.) Accordingly, Plaintiff's monthly income exceeds his average monthly expenses by only $156.05. Considering this information, the Court finds that Plaintiff has sufficiently shown an inability to pay the $405 filing fee pursuant to § 1915(a).

**B.    Screening Under 28 U.S.C. § 1915(e)**

**1. Applicable Standard**

As discussed above, every complaint filed pursuant to the IFP provisions of 28 U.S.C. § 1915 is subject to mandatory screening by the Court under Section 1915(e)(2)(B). *Lopez*, 203 F.3d at 1127. Under that sub-provision, the Court must dismiss complaints that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While the Court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled[,]" *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### 2. 28 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citation omitted). In order to establish liability under 42 U.S.C. § 1983, a plaintiff "must show both (1) [the] deprivation of a right secured by the Constitution and [the] laws of the United States, and (2) that the deprivation was committed by a person acting under [the] color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Here, Plaintiff asserts claims against Judge Curiel under 28 U.S.C. § 1983 for violations of his Fifth and Fourteenth Amendment rights to due process, equal protection, right to an impartial decision maker, and a claim for libel and slander. (Complaint ¶¶ 68–77.) For his remedy, Plaintiff seeks compensatory damages including for emotional distress and mental anguish, punitive damages, and an injunction. (*Id.* ¶ 94.)[4]

---

[4] While Plaintiff mentions other judges in his Complaint, he does not assert claims against those judges and the Court therefore need not examine the alleged conduct by those judges.

### a) Judicial Immunity

"Judges are absolutely immune from civil liability for damages for their judicial acts." *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987) (citations omitted). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). "The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief." *Id.* at 1394; *see also Austin v. Chesney*, No. C 22-02506 WHA, 2022 WL 3205196, at *1 (N.D. Cal. July 1, 2022) ("Unlike the judicial immunity available to state judges or state judicial officers sued under Section 1983, a federal judge's immunity is not limited to immunity from damages and extends to actions for declaratory, injunctive, and other equitable relief."). "Judicial immunity also cannot be overcome by purporting to sue a judge in his or her individual, as opposed to official, capacity." *Sanai v. Kozinski*, Case No. 4:19-cv-08162-YGR, 2021 WL 1339072, at *7 (N.D. Cal. Apr. 9, 2021). "Should a federal judge or other federal official performing a judicial or quasi-judicial act violate a litigant's constitutional rights in a proceeding pending in federal court, Congress has provided carefully structured procedures for taking appeals, including interlocutory appeals, and for petitioning for extraordinary writs in Title 28 of the United States Code." *Mullis*, 828 F.2d at 1394.

"A judge lacks immunity where he acts in the clear absence of all jurisdiction, or performs an act that is not judicial in nature." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal quotation marks and citations omitted). "The factors relevant in determining whether an act is judicial 'relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" *Id.* (quoting *Sparkman*, 435 U.S. at 362). "The Supreme Court has distinguished judicial acts to which absolute immunity necessarily attaches and administrative acts for which such immunity is not

available." *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452, 1454 (9th Cir. 1993) (citing *Forrester v. White*, 484 U.S. 219, 229–30 (1988)). "Judicial acts are those involving the performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights. Administrative acts are, among others, those involved in supervising court employees and overseeing the efficient operation of a court." *Id.* (internal quotation marks and citations omitted).

Here, Judge Curiel's actions in entering an order dismissing Plaintiff's Fifth Amended Complaint and mailing notice of that order to the OHA's attorney were judicial actions involving the performance of the function of resolving disputes between the parties. Judge Curiel's statements in the order that Plaintiff now alleges were libelous and slanderous were part of Judge Curiel's judicial act. Plaintiff has not provided evidence or allegations that Judge Curiel's actions were taken in the clear absence of all jurisdiction and were not judicial actions in nature.

Even if this Court were to assume the validity of Plaintiff's allegations "that there was misconduct afoot, or a conspiracy of retaliation from several judges, these allegations still do not unmask this judicial immunity from the defendants." *Sanai*, 2021 WL 1339072, at *9. "Grave errors or malicious act[s] alone, or even an improper conspiracy by judicial officers, do not tear asunder this immunity." *Id.* "Indeed, judicial immunity [is not] lost by allegations that a judge conspired with one party to rule against another party: a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges." *Id.* (internal quotation marks and citations omitted). Thus, Plaintiff's claims are barred by judicial immunity.

### b) Leave to Amend

Generally, *pro se* litigants should be given an opportunity to amend their complaints. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). "Courts commonly use four factors to determine the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Moore v. Greyhound Bus Lines, Inc.*,

Case No. 3:15-cv-1186-CAB (MDD), 2016 WL 10676105, at *2 (S.D. Cal. Aug. 24, 2016) (citing *Ditto v. McCurdy*, 510 F.3d 1070, 1078–79 (9th Cir. 2007) and *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973)).  Given that Plaintiff's claims against Judge Curiel for his judicial acts are barred by absolute judicial immunity, allowing Plaintiff leave to amend would be futile.  *See Doe v. Fed. Dist. Ct.*, 467 F. App'x 725, 728 (9th Cir. 2012) (finding district court did not abuse its discretion in dismissing pro se plaintiff's case with prejudice where further amendment would be futile).  Accordingly, the Court denies Plaintiff leave to amend.  The Court thus **DISMISSES WITH PREJUDICE** Plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## IV. CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiff's Motion for Leave to Proceed IFP (Doc. 2);
2. **DISMISSES WITH PREJUDICE** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2);
3. **CERTIFIES** that any appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3); and
4. **DIRECTS** the Clerk of Court to serve a copy of this Order by U.S. Mail on Irvin Musgrove, 1540 S. Escondido Blvd., Apt. 2310, Escondido, CA 92025.

**IT IS SO ORDERED.**

DATE: April 5, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE